I wonder if the attorneys who are going to argue on Mr. Clinton step up and identify yourselves for the record, please. Good morning, Your Honors. Lindsay Anderson, Assistant Appellate Defender on behalf of Lawrence Courts. Ms. Anderson, good morning. And you, sir, are? Good afternoon. I'm Miles Kelleher. I'm the Chief Justice of the people of the State of Illinois. Counsel, you both be entitled to what? Is this your first time here? It is, Your Honor. How did I know that? How did I know that? When you get to be as old as I have, you can almost spot a new lawyer. Well, welcome to the appellate court. You'll be given 15 minutes, Ms. Anderson, to address the court in oral argument, and you can save out from that any portion you wish for a response. And I think you can safely assume – you also have 15 minutes – I think you can safely assume that we're familiar with your briefs and the issues in the case. You may proceed. Your Honors, today I will be addressing two issues mainly, and if time permits, I will briefly argue a third. The first issue regarding the commingling of the substances, the second issue relating to the lack of evidence demonstrating intent to deliver, and the third issue, if time permits, the prosecutorial misstatements in closing arguments. Your Honors, this case is really about the testimony of forensic chemist Bowler at trial. He testified, and the State concedes, that he combined the contents of six packets into one weight boat before testing any of those packets for the presence of narcotics. I'm going to throw a question your way, but you may not have that answer, but the State may have it, however. When they tested the packet, is there some way of determining the degree of purity so as to have some sense of whether there would – the presence of cocaine in all of the packets? The problem is if they collate, if they combine six packets, how do you make sure that that combination reflects the presence of the substance in all of the packets as opposed to just one, which will then reflect as being present in the entire mix? Now, obviously, if the testing tells you this is 98 percent pure, that tells you that's a sampling, at least if sampling were permitted, that would tell you that they ascertain the contents of 98 percent of all the packets, which would mean every packet basically containing that substance. On the other hand, if they don't have that result, how do you know – and this is a softball – that they are really testing six packets, they're only testing one? Because if one will contaminate the other with that substance, it will be reflected positive for that substance, but all you have is one, in which case if sampling were permitted, you would have only one sample. Yes, Your Honor, your question goes exactly to the heart of the issue here. And the problem with what the State did here is – Well, see, if you were here – if you had argued here before, I would become very suspicious when you would tell me – when you would complement my question. I would, too. I would, too. Well, you know, the Illinois Supreme Court established in Jones that where separate containers are presented for analysis, we must test a sample from each container before that sample can be included in the total weight. So your question goes to, how do we know in this case whether or not it was one packet that had some amount of heroin as opposed to all six? We have no testimony or evidence establishing the purity of the drugs involved here. And in fact, any conclusion that all of these packets contained heroin would be based on guess, speculation, and conjecture, which is exactly what Jones prescribed. You have a recent case that supports this first issue in Coleman, and the State really hasn't had an opportunity to respond to that case. In that case, however, there was a stipulation about the weight, so the Court found that there was no actual error. I don't know how the State will respond to Coleman because it came out after the filing of their brief and after your reply. I have one question, though, regarding your brief. You say there should be an outright reversal. Maybe we can get to that when you talk about with intent to deliver, but is it intertwined with the first issue as well? Well, yes and no, Your Honor. For the first issue, we're asking for an outright reversal because the State failed to prove the element of weight. They chose to charge us to the jury in a very specific manner. But they did establish there was – was it heroin in this case? Yes. All right. They did establish that there was heroin present in the substance, did they not? They established some trace amount of heroin, but the problem here is that they required – I thought it was – I beg your pardon? I thought it was .5 something. Didn't he testify to that? Your Honor, he testified that he combined the contents of six packets into one weight row, and then he did a color test on that, which confirmed the presence of heroin, and then he did the GCMS test, which, again, confirmed the presence of heroin. The problem is with that testing procedure, we really don't know the exact amount of heroin that was here. All right. Well, the statute doesn't require anything more than – .1? It doesn't require anything more than the presence of a controlled substance. Yeah. Isn't that correct? I think what you're getting to is perhaps this Court's power to reduce the offense as opposed to – Of course, we do have that power, but in your brief, you say there should be an outright reversal because the jury was instructed that the defendant either possessed with intent to deliver more than one but less than 15, and they were given the lesser included offense of possession. Now, you say that, therefore, there should be an outright reversal, but you don't cite any cases. And the question is that whenever – I mean, what did the Supreme Court do in Jones? In Jones, Your Honor, there was a reduction to the lesser included. Okay. The difference here, the way that the state chose to charge the lesser included was to charge it as possession of one or more grams. So they went on a very specific theory at trial that they presented to the jury,  Mr. Clinton had to possess at least one gram. Now, is there anything that in Jones would suggest to you that the Court considered that, or did they actually cite to a case that says that whenever a defendant is charged with possession with intent to deliver and there's a lesser included offense of possession for a smaller amount, the defendant can be found guilty of that lesser amount? Your Honor, I'm not sure what Jones cited to there. They cited to the Williams case. But Jones affirmed the appellate court that reduced the amount to a lesser amount. That's correct. Well, isn't the case law that whenever there's a – a defendant cannot be found guilty of an offense that he's not charged with unless there's a lesser included offense? Yes, Your Honor. That's it contained in the outline of the charge? Yes, Your Honor. All right. And this outline does have possession with – straight possession, doesn't it? Yes. But the reason we're asking for an outright reversal, and this is an alternative argument, this is one thing that we would ask this Court to consider amongst other alternatives.  Is for the outright reversal under the theory that they charged this to the jury, that for possession or possession with intent, they needed to prove one gram. Our contention is that they did not prove that one gram, and it would be profoundly unfair to allow them to obtain a position. But don't you need authority for that position? Yes, Your Honor. And do you cite any? Your Honor, I did not cite authority, and the State didn't address this point in their brief, so I would be happy to cite additional authority, which I can cite for you now. In People v. Mata, which is a 1993 case out of this district, the Court found that although it had the power to reduce, it chose not to exercise that power and gave the defendant an outright reversal because the State did chose to proceed on a greater offense at trial. Why didn't you cite that in your original brief? And if not, why didn't you cite it in your reply brief? I mean, now the State, you know, I don't know how they're going to respond to that case, but I'm not certain. Go ahead and tell us what that case says. Well, in that case, they were dealing with residential burglary v. burglary. Oh, all right. At that time, was it not the case that the residential burglary statute had been amended to indicate that burglary was not a lesser-included offense of residential burglary? Well, in that case, the Court found burglary to be a lesser-included. And so they said, we're not going to give you a conviction in the appellate court on a charge that you did not charge in the trial court. So this is something that we're saying we recognize the Court's power to reduce. But Peeble v. Robinson explicitly tells you that you could charge the lesser-included offense. Yes. I'm intent to deliver as long as you prove the amount. Well, so does the Williams case and Jones. An opponent does not contest this Court's authority to reduce. We're just saying in the alternative, because the State chose to charge us in a very specific way, arguing for possession, the jury had to find one or more grams that a reversal would be appropriate. But in the alternative, if we're looking at the evidence on intent to deliver, there wasn't sufficient evidence, and therefore, a reduction to Class IV possession of any other amount would also be appropriate. If we look at the facts in this case, Mr. Clinton was found with walking down a residential street on a Sunday morning all by himself. High-crimes area or not? Yes, Your Honor. Officers did testify that this was a high-crime area. And isn't this one of the indicia that the courts can look at to determine whether there's a sale here somewhere, an intent to sell? And under those circumstances, while the courts are spread all over the place on quantities, but they have approved 12 packets, 26 packets, and small amounts of money like $75 and $40, as long as it's in a high-crimes area, that that would be sufficient basis for which to affirm. The Supreme Court has said so, hasn't it? Well, Your Honor, I believe you're addressing white, which the State heavily relies on. The difference between the high-crime area described in white and the high-crime area described in this case is that in white, there's specific testimony from the officers that not only was this a high-crime area, but an area known for its drug activity. And, in fact, in white, the officers were responding to a tip about drug activity. So it's not just that it was a high-crime area, but an area known for its... and then running and discarding the packets when the police were pursuing. Of course, discarding could be admission of guilt of possession rather than intent. But doesn't it all converge in the mix to provide a basis for affirming an intent to sell? No, Your Honor. I would submit that it does not. He wasn't found next to a car. The only car that's testified about is the unmarked police car, which drives up on the defendant as he's walking down the street. He sees it, and when the officers get out, he decides to run. Now, there's no other people found on the street. There's no other pedestrians. They don't observe any... Wasn't he... I'm not... I don't recall anymore. Wasn't he loitering in that area? I don't... Wasn't he just idling time on his feet in that area? It was 7 o'clock in the morning. He might have been waiting for a bus. I thought he was walking, and he dropped a piece of paper inside the paper. Well, he started to run. Yeah, he looked at them. They said he looked at them, and then he ran. Yes. All right. 7 a.m., he's going to work. I believe the testimony of the officers is that they observed him walking down this residential street. So there wasn't testimony about him idling or... And, again, they didn't observe any transactions, and they didn't observe any other people in the area. No. So when we look to the Robinson factors, there really aren't the same type of factors existent here that the court found indicative of intent to deliver in Robinson. We don't have any weapons. We don't have a high purity of drugs. There was no other paraphernalia found, such as packaging material. But there was no paraphernalia for personally receiving, and courts do look at that. Yes, Your Honor. However, it's the state's burden to prove that this amount of drugs is not consistent with personal use, not the defendant's. And, again, in white, although they noted that the lack of paraphernalia might suggest an intent to deliver, in white, there's something present that wasn't present in this case. The officer offered detailed testimony about what would be required to smoke crack cocaine. Here, there's no testimony whatsoever that you need paraphernalia to ingest heroin, and, in fact, heroin can be snorted. And that's not of such common knowledge that would permit judicial notice, that it just doesn't get there by osmosis? Well, Your Honor, I'm not certain if you would want to take judicial notice of the fact that you can snort heroin. I got that information from the National Institute of Drug Abuse website. If you would like me to cite additional evidence. You went outside the record to justify some of the arguments you're making in your brief. Now, there might actually be, indeed, cases that support what you're saying, because there are cases that indicate testimony regarding crack cocaine, that in order to ingest that, it has to be, well, whatever. It's in cases. Now, it's very likely that there's cases going back to 75 years that suggest exactly what you suggest, that heroin can be snorted, injected with a needle, burned on a spoon, whatever. I know there's cases out there that say that. We don't have to go to the National, what was it? Institute of Drug Abuse. But, you know, you have a case supporting you again on this that the state really hasn't had an opportunity to address yet. That's the Sherrod case by Justice Murphy. It kind of is similar to this case, factually. So I guess it's only fair to let someone have an opportunity to, you know, address your, you know, the authority. Just as a technical question on review, I noticed that at trial the defense attorney never objected to the testimony of the expert witness with respect to the composition of the drugs. Was there a post-trial motion filed with respect to his testimony challenging it as you are doing now on appeal? No, Your Honor. That was not challenged in the post-trial motion. I noticed also that the state's attorney didn't claim forfeiture or waiver in his brief. Who wins on this one? We do, Your Honor, because in this case it's a reasonable doubt challenge. The state maintains the burden of proving every element of the charge. We can't impose forfeiture on our own. We can't take judicial notice of the fact that you never objected to the expert testimony at trial nor filed a post-trial motion challenging that testimony. Your Honor, not on a reasonable doubt challenge, which is what we're dealing with here. The state had to prove the element of weight, and based on the testimony of the chemist, they failed to do so. So it's really a reasonable doubt challenge, and, you know, defense counsel wasn't required to make the state's case. It's a good answer. Just test it. So I think really that's the heart of what we're dealing with here. The state's evidence on intent to deliver was very weak. When we compare this to Sherrod, in Sherrod there were 17 bags, 1.8 grams, $35 cash. This Court found that insufficient to show intent to deliver. And when we compare it to this case on facts strikingly similar, the 13 bags, 2.8 grams, and $40, there's not sufficient evidence of intent to deliver. So if this Court should agree with Argument 1, that the state failed to prove the element of weight, and with Argument 2, that they failed to prove the element of intent, Mr. Clinton wrote requests that this Court reduce it to possession of any other amount, which is a Class 4 felony, and therefore remand for resentencing. And briefly, for my final point, in closing arguments, the prosecutor asserted facts which were not in evidence, stating that Mr. Clinton went into painstaking detail to package these drugs. And to bolster that error, in rebuttal closing argument, the prosecutor likened the 13 packets of heroin to a 12-pack of beer, and told the jury, that's how we know that there's intent to deliver. Because you would share a 12-pack of beer, you'd also share a 13-pack of heroin. We would submit that the jury... That's kind of a silly argument, actually. I would say so, Your Honor. I think it was more prejudicial to the State or to the defense. Your Honor, it was prejudicial to Mr. Clinton, because it bolstered the State's case on their weakest point, which was intent to deliver. Is that what the cases that reject that kind of evidence focus on, or do they focus on the fact that it's the attorney, the prosecutor, giving testimony? Is this a case where the prosecutor is giving testimony, is giving his own evidence to the jury? Yes, Your Honor. I don't know about that. Do you really think that that's the equivalent of saying, you know that he has to have done this and done that, as opposed to talking about matters that are current and common in human behavior in this part of the world? Well, Your Honor, I was referring more so to the first statement, saying that he went into painstaking detail. That was not based on any evidence in record. Now, that's different. Right. So that was why I answered that question in the affirmative. Of course, he responds to that by saying that since you find an intent to sell, his packaging becomes a matter of inference. And I don't mind telling the prosecutor right now that the flaw in that reasoning is that he's using the packaging to prove intent. So he's begging the question, basically, with that argument, because you can't use it to prove intent and then say intent is now proven, therefore we know a package. Right. And that is the problem with that argument, Your Honor. And so both of these errors in closing argument denied Mr. Clinton a fair trial because it bolstered the State's case on their weakest point, which was intent to deliver. Therefore, there's no way of knowing what type of role this played in the jury's decision to convict him of intent to deliver, and Mr. Clinton must be given a new trial. Unless you have any other questions? We'll give you a chance to respond after we've heard from Mr. Kelleher, okay? Thank you, Your Honor. Thank you, Counsel. Mr. Kelleher. May it please the Court? Defending was proven guilty beyond a reasonable doubt of possession of a controlled substance with intent to deliver. When the evidence in this case is viewed in the light most favorable to the prosecution, a rational prior effect could have found the essential elements of the offense beyond a reasonable doubt. The intent to deliver is primarily the number of packets that he had? Is that what you're relying on? What else have you got besides the number of packets? Well, and do you have the number of packets if you only have the testing of one combined six-pack, using the theory? You have six packets combined in one, and a testing of that one without showing, unless you can establish that that one test speaks for all six packets. You simply have a testing of what would minimally be one packet. Can you get past the Supreme Court in Jones on that basis? I believe one question goes to the intent to deliver. The other goes to the? Well, we're talking about intent to deliver, right? Intent to deliver, if it's based on the number of packets, it can't be simply packets of sugar. There has to be packets of the controlled substance. And have you really shown any number of packets in the controlled substance through the one lab test performed on that six-pack, unless you can establish the degree of purity in that sample, which would necessitate a finding that every pack in that combined package contained heroin? Yes. I'll address both of these issues. Well, it's really one question? In terms of the intent to deliver, first, assuming that we have established that this is heroin, based on the expert testimony, yes, the packaging is highly significant. What else besides the packaging is significant? It's 7 o'clock in the morning and the guy's standing on the corner. There's nobody else around. He's not been observed making any kind of a transaction whatsoever. What else is significant? You're going to say high crime area? He was in a high crime area. So what? I mean, that means he could just as easily have purchased 13 packets easily as sold 13 packets easily. He possessed $40 in cash when the police? $40 in cash? So what? That hardly buys you dinner. Mr. Kelleher, what would you say about the recent case? What should we do with that? The recent case is not all fours with you, this actual scenario, except that guy was driving a car when they got to the station. They inventoried the money. It was $40 or $35, and it was a number of packets, but around the same amount. So what are you going to tell us? It was poorly decided? Be careful. The state respectfully submits. First case. Yes. The state respectfully submits that that case was wrongly decided. You're going to say that? And I believe that it's inconsistent with the White case. So you're not prepared to confess error on this case with respect to the issue of intent to deliver? No. Okay. What about White? Well, White, in White, we had a situation involving 12 packages. That's one less package than is present in this case. Now, there was a little bit more cash in White. In White, he had 12 individual packets of baggies of rock cocaine, totaling 1.8 grams. He had $75 in cash. And the police officer testified he was familiar with the type of objects used to consume crack cocaine, such as a round cylinder of some type, such as a car antenna or glass tube with openings at both ends. The officer also stated that this amount of crack cocaine was inconsistent with personal consumption. Another officer testified that the size of the individual rocks were the typical size of those sold on the street for $10. Each, he also said the 12 rocks were in separate bags. Given that packaging and the amount of money, that officer testified that he was most likely selling the cocaine. Plus, the officers both testified in White that the area where a defendant was arrested was a known location where illegal drug activity took place on a continuing basis. And there were five apartments in which illegal drug sales were ongoing. So, I mean, that's White. And the packages added to that, the packages were divided into dime packs, $10 packs, even one, which are generally packs that are prepared for sale. So is this really the same as White? The facts are. And if it is, what's White wrongly to say? However, some of the factors that were considered in White, such as the absence of any paraphernalia associated with personal use, here. That cuts two ways, though. I mean, by itself, because they also did not find any scales or other paraphernalia that would be a characteristic of a vendor. That's correct, but White addressed that factor. White noted that the fact that the packets were prepackaged negated any need for devices, such as devices that would be needed to cut or weigh the substances. They were already prepackaged for sale. And that's the situation we have here. However, yes, there are a number of ways you can inject heroin. However, there is no evidence here that the defendant possessed a syringe or a spoon or any other type of ---- Maybe he had just bought the 13 packets a moment before the police arrived and observed him and was on his way home to shoot up. You don't need instruments to snort it, as counsels pointed out. These are all factors that the jury had to consider. There were numerous factors here. Every case is unique. Every case has to be decided on a case-by-case basis. And I submit that the jury had to consider all these factors in addition to the packaging. But you still had to show some evidence of intent to deliver. Yes, even the catch. What are you relying on other than the number of packets that he had in his possession? He had $40 in cash. Now, to some jurors, that may seem like a lot of money. To other jurors, that might not seem like much. But ultimately, it's a question of fact. They may have considered the fact that this occurred early in the morning. He hadn't sold anything yet. Maybe he just had the $40 to make change. Yes. Or he just bought his stash for how many days, I don't know. But to do that, they have to assume that he was a seller before they looked at anything. That's right. You're absolutely right, Judge. Well, it's a factor that they could consider in determining whether or not he was a seller. Now, when you're dealing on a higher up in the delivery chain, on the wholesale level, you might expect to have larger amounts of cash. He's down on the retail level, smaller quantities. We're dealing with smaller amounts of cash. Could an officer tell us that? Could an officer give us this kind of information that you're giving us now? We can't find that in the record, and we certainly don't find that in cases. This is a low-level seller. It would be useful, for example, if you had an officer who testified that, in my experience, anybody carrying more than, say, pick a number, 10 packets is a dealer. The officer had said that. In my experience, most of the people we've arrested for delivery carry, on average, about 10 packets with them at all times. That would have been useful. Or of all the arrests we've made for intent to deliver, we're seeing this kind of 10 to 20 packets, this kind of currency, this amount, and that he's really just a low-level seller on the corner. But that's what he was doing. But there's no such testimony in this case, is there? That's correct. There isn't testimony. However, that doesn't preclude the jury from considering that fact. The jury, even without such testimony, could consider all the factors that could bring their life experiences. All that you're telling us is that what they did find was not wholly inconsistent with his being a seller. But you don't prove cause by proving consistency. You certainly don't prove it beyond the reason of the matter. You know, those instructions to the jury don't have these things in them, I think, that you're referring to. When they define the elements of possession with intent to deliver, there's three. That's what the jury's told that the elements are. Then they're actually instructed that if you find that the state has proved, you know, all three of these propositions beyond a reasonable doubt, you can find the defendant guilty. If you find the state has not failed, and I forget in this case, they have a guilty, they have a not guilty, they have a guilty with intent to deliver, and then they have a guilty of possession. So I'm not sure they're given the Robinson factors, but maybe I'm incorrect. Were they given those factors? I don't think they are. That's not an IPI unless I'm way off here. I don't believe so. The Robinson factors, as the Supreme Court has noted, right, they're just examples. And the jury is free to consider all the evidence that they hear. Any factor that they may find significant in their determination, and ultimately it's their determination. These cases are all unique. They have to look at these on a case-by-case basis. Mr. Keller, if you look at Robinson, though, the seven factors that aren't meant to be exhaustive, I don't know where you go with that because the first one is whether the quantity is too much for personal consumption. There was no testimony about that, no testimony in this record. The next one was high purity of the drug confiscated. Again, there was no testimony that this was pure or not pure. Possession of weapons, there were no weapons. Possession of large amounts of cash, well, I don't know. Like you said, that could go either way. But, you know, $40, I don't know if that's a large amount of cash. Then possession of scanners, beepers, or cell phones, there wasn't any of that. Drug paraphernalia, what we have here is packaging. We have that. Thirteen packets. But we don't have other drug paraphernalia, you know, like pipes or needles or whatever. And then the manner in which the drugs are packaged. And we do have, again, I think that's on both of those you can use the packaging. And, of course, these aren't meant to be exhaustive. But if you look at these, what do you have? First of all, of course, the Illinois Supreme Court noted that the absence of Robinson factors is of no consequence. In other words, every factor that you just mentioned, aside from packaging, could be absent. And you still could have other factors present, which would be sufficient. Would the number of packets by itself be sufficient? If there were 22 packs or 12 packs, as the case is here, of drugs, standing alone with nothing else, would that be enough? Yes. Robinson makes it quite clear that in appropriate circumstances, packaging stands alone. Is 12 packs enough by itself? In appropriate circumstances, yes. In these circumstances. But when you're talking about appropriate circumstances, you're avoiding, and I'm not accusing you of doing my hypothetical. When I say, if that was the only factor, would that be enough? When you talk about other circumstances, you're basically saying, when there are other factors. I'm eliminating that in my hypothetical. I'm saying simply, is the number enough? Again, the trier of fact would have to look at it on a case-by-case basis. However, there are certain situations where, yes, 12 packets alone would be enough. I don't think you're going to be telling us that 12 packets with no other indicia whatsoever would be enough. So that means that you have to look at whether you have other factors. The presence or absence of drug paraphernalia, they kind of neutralize each other, don't they? The $40 neutralizes itself. It can just as easily be reflective of personal use than it can be reflective of recent sales. Packaging. Now, is that enough? Because if a drug seller packages carefully, what does the drug buyer get? The same package, right? So it's consistent with buying as much as it is with selling. Not necessarily. He repackages it when he gets home. Is that what you're saying? I think it's quite common. I mean, doesn't he get the package that the vendor sells him? Not necessarily. It's quite common on the wholesale level where drugs are sold. We're not talking about retail versus wholesale, or are we? Are we now talking, is there a separate offense for wholesale or for retail? My point is this. I'm going to refrain from ganging up on you too much because you're in a tough spot. But when drugs are sold on a large quantity, they are often sold in one large package. And then as it goes lower down the delivery chain, the seller will buy a larger quantity. But the buyer buys that quantity that is allocated by the retail vendor. And that's what he keeps. Those packets are generally the measurement of a single dose, I would think. But it's often the person who is doing the selling on the street who does the own packaging. Yeah, but there you're in trouble because you can't show that he did his own packaging without showing at least that he was a vendor. But you can't prove that he was a vendor on the basis of the packaging because he could be a buyer and have those packages. And the state's attorney did, in his closing argument, misstate the evidence. There was no evidence that he had packaged that stuff. And yet the state's attorney was allowed to suggest that to the jury. To prove he was a vendor. Packaging and money can support a conviction. We've got this case now that says that, you know what, packaging here, small amount. The money wasn't enough. I think your bigger problem is the lab here. What are you going to do with Coleman? You didn't have a chance to respond. It was citing additional authority. Or no, I'm sorry, it came up in the reply brief. Pardon me, misspoke. What do you do with Coleman? Coleman said they stipulated to the 96 point grams of cocaine.  You're stuck with it. You said it was 96 grams of cocaine. You stipulated. No error. Here we have a different situation. Well, the discussion in Coleman was dicta. So it's not binding authority. But your serious problem is the sampling. Right. The Supreme Court doesn't let us. We can't. This is not a case of pills where they're homogenous. Counsel referred to the case of Jones. And that case is very distinguishable from this case because in this particular case, the chemist combined the six packets. You're not listening to the judge's hypothetical, which is implied in her question. He tested six of the 13 packets, right? Yes. Suppose, just for the heck of it, that this guy had been sold 13 packets, six or let's say eight of them had contained some heroin, and the other five were nothing but he was getting ripped off. But more fundamentally, they didn't test six packs. They tested one because they don't give us any level of purity to indicate whether the five other packs had any heroin in them. First of all, as was observed earlier, there is never any challenge to this. The threat to the trial, though, Mr. Kelleher, is over and over again the appellate and the Supreme Court's telling the chemists, be careful. Right. Be careful. These questions could have come up and raised in the chemist's. This is the sufficiency of the evidence. They don't have to raise this. This is a reasonable doubt argument. They're saying you didn't prove more than one because he dumped everything in. He dumped six packets into a wayboat to get past one gram. That's what he said. But here the expert, he was qualified as an expert in forensic chemistry, he has to make a decision because he has to render an expert opinion. He has to decide on a case-by-case basis how he is going to do it. Well, I hope they're not doing this all the time. This is going to be a problem. How he is going to. . . I didn't realize they were doing this. How he is going to test these. Now, the question of purity came up. If you've got a total, you know, it's not like having 300 packets, okay, and you're trying to figure out how to do a representative sample. He's got 13, but he decides that six would be enough. Now, say in a hypothetical that one wasn't heroin. There's no evidence here that he detected an unusually. . . You don't have to put in any evidence. You're the one that has to come up with the evidence. Right. The Supreme Court basically said you can't do this with powder. You can do it with pills if they're all identical and marked and they have little numbers or letters and they're the same color, but you can't do that with powder. And you can't do it with rock cocaine, I don't think. Can you? In black, it extended the scope of colutus to include substances that are not necessarily in pill or capsule form. Didn't the court reject colutus basically unless you have homogenous pills? Well, here there is testimony that from the chemist, the expert witness, that he had, during the observation and testing procedure, he opened all 13 packets. He determined that they were consistent. He verified that they were consistent. And how did he do that? That question never came up. He never tested to find whether they were consistent. Consistent to the eye. He used his. . .well, this is an expert eye. Why do they have possession with intent to deliver a lookalike? Why do they have lookalike crimes? Because white powder can be the real stuff or it can be fake. It can be baking soda. It can be powder. It quite often is on the street. So, I mean, what about what the judge said in Coleman?  The defendant's liberty is at stake for 900 grams, so much more than he is for 10 grams. I submit that the chemist's testimony that he verified that they were consistent is analogous to finding that they were sufficiently homogenous. And during his testing. . . Are you trying to use Wilson v. Clark to trump the Supreme Court's decision in Jones? You know, that, you know, 703 and 704, that the expert opinion trumps the need for actual evidence as long as the expert certifies this as being his conclusion, that you can't look beneath the evidence that he used in forming his basis, in forming his conclusion. And where Jones is a powder case, a rot case, and tells us that wasn't. . . Justice Heitkamp said, that's not enough. You need capsules, as elaborated by Justice McBride, that are very carefully stamped out of the same machine. Hey, you might have a winner on the other issue. The jury was free to reject. . . Let's talk about that, Mr. Kelleher. What about the defendant's suggestion in the brief, that because the state didn't prove more than one, that you're out of the box completely and a reversal is warranted? An outright reversal is certainly not warranted under any circumstances here. If this Court found that the evidence was insufficient to establish intent to deliver, then the lesser-included offense of possession kicks in. But the amount, what about the amount? You polluted your whole possession case because of the way you handled the test. There's still evidence from the expert witness that his conclusions were basically twofold. One, there was heroin. Two, it was over a gram. Okay, but let's say it's true, it's heroin, but it's under a gram. Then what happens? What happens then? That's still a criminal offense. Because that's any amount. It's a lesser-included offense of possession with intent to deliver of a smaller amount. Yes, that's correct. Is there any authority to reverse that or grant a reversal outright that you're aware of? No. As long as the spectrograph shows some heroin. That's exactly correct. You should be on a solid ground. Well, not very solid ground because we've cut your legs off on all of the basic charges. Intent to deliver more than one. Well, it's still the state's position. A third victory for the state, isn't it? It's still the state's position that this should be affirmed on all levels. Yes, because in Jones, the nature of the untested packets were at issue. Here, the packets were tested. So at least, no, the packets weren't tested. That's the issue. That's the question. And you keep avoiding that by saying the packets were tested. Only one pack was tested because that's all that the test result would be sufficient to show, is that one pack had some content of heroin of an undefined amount. That's all you have. You have nothing here that shows you that any other packet but one had the substance that the test produced. If a chemist tested, combined six packets, tested that, and noticed that there was an unusually low level of purity, then that chemist might say, oh, this is unusual. I think I'm going to test the additional packets. Who has the burden here? Must we infer from what he didn't say? Or do you have the burden here of what he actually found, of producing, of proving that? You have the burden of proof here. Should we bend over backwards to say, well, he would have said something if there was less than enough? Will that carry with that? The state obviously has the burden of proof. We put on the testimony of the expert witness. The jury heard the testimony, heard the procedures. The jury was free to accept that testimony, reject that testimony. It was the expert witness's opinion, based on a reasonable degree of scientific certainty, that not only was this heroin, but it was over one gram. And to suggest otherwise is almost trying to bring back the reasonable hypothesis of innocent test, where we're thinking, well, you know, maybe in theory one of those packets might have contained something. Well, should you be able to avoid the requirement of sampling if sampling is enough? And sampling may not be enough in any degree where you don't have homogenous items that contain the substance. But should you be able to avoid it by simply pouring it all into one sack and then testing that sack? That's a shortcut, I'm sure, that would save some money for the state. But is that what you think will be sufficient? In this situation, if the chemist found that the 13 packets weren't consistent, then, of course, we would expect him to conduct the test. Well, let him get a level of purity. This chemist isn't working anymore. I have to notice in reading the record, he's not working for the lab anymore. Why couldn't he get a level of purity? I don't think that's relevant. I know. I just threw that out there. You have to remember, even though you're being beat up, Mr. Kelleher, two of the people up here who are beating you up are former assistant state's attorneys. We know how the sausage is made. Well, I think if they're testing it like this, you better work on that. I'd like to just also address, if I could just briefly address the prosecutor's comments during closing argument. It was mentioned. I don't think you want to go there. I don't think you need to spend time on the 12th. But tell us about, if I'm speaking for my colleagues, I agree, I agree. Don't talk about the 12th package. But the packaging is. First of all, the misstatement of the evidence is a serious issue. That alone could cause you a serious problem, it seems to me. If in the closing argument, the prosecutor misstated the fact that it had been established that the defendant packaged these drugs, and that was the implication of the statement of the jury, was it not? Well, first of all, there is no objection here, either at the trial level or no objection raised in the post-trial motion. So this issue is waived. Okay. But it was a reasonable. Inference? Comment based on a reasonable inference from the evidence. Why? Because there was, obviously the jury could have accepted the inference or rejected it. Well, you know, the prosecutor could have said these drugs were packaged. There were 13 packages. The defendant was in possession of these drugs. They were contained in a bag. First they were wrapped in a piece of paper. Then they were wrapped in a plastic bag. Why would that show that he wrapped it as opposed to the seller, the real seller, assuming he wasn't? Ultimately, it was up to the jury to decide whether or not to do that. If there was some evidence upon which he could, you know, I mean, everybody's told. The trial judge says, ladies and gentlemen, you're now about to hear a closing argument from both the prosecution and the defense. I caution you that what they say is not evidence. It's their reasonable inference and argument about what the evidence showed. There was no evidence, none whatsoever, that he packaged this stuff. And yet the prosecutor graced that as an inference from the other evidence, whatever that other evidence was, is that if you possess 13, you must have packaged it. I submit that it is a reasonable inference because of. At the very least, you would have to stand on the ground that the packaging was not evidence of his being a vendor, that there was enough evidence of his being a vendor without reference to the packaging. Then you would have the basis of saying, well, if he's a vendor, he packaged it. But to what end would you be saying that if he's already a vendor? What else does that prove? Well, again, we had the money that was found on the defendant. We had the absence of paraphernalia. But then it's irrelevant at that point. The fact that he packaged it carefully would not be of any use to you. Since it cannot be used to show he was a vendor. It's only an inference that would be derived from a conclusion existing without it that he was the vendor. So then it would be something superfluous. Roberts. Would you like to sum up now, Mr. Kelly? Yeah. Please. I do submit if any error did occur, it was harmless. And also cured by the trial court's admonishments to the jury. And also forfeited. In conclusion, for all the reasons I just stated, as well as those stated in the brief, the people respectfully request that this Court affirm the defendant's conviction and sentence. Thank you. Thank you. Very good. Ms. Anderson, a final word. Briefly, please. Are those all your relatives back there? Friends and family. Friends and family. When you say family, what do you mean by family? My husband's in the courtroom. Your husband's in the courtroom. Anybody else that you're related to back there? Okay. Yeah, I think you can tell them all that you both, Mr. Kelleher, and you have done a pretty good job with a tricky case. Well, thank you. You're welcome. I will keep it brief. My main point is that under Jones, the State was required to test a sample from each packet. They failed to do so. Therefore, they did not prove the element of weight. Under Robinson, they needed more than just packaging. They failed to show an intent to deliver. And because they failed to prove both of these elements, weight or intent to deliver, we would ask that you reduce this to Class IV, simple possession, which is possession of any other amount. Do we reduce it or do we remand it? Reduce and then remand for resentencing. Or, in the alternative, the maximum penalty of three years would also be fine. And with regard to the prosecutor's misstatements of evidence in closing arguments, that is reviewable under plain error. And here, the evidence is clearly closely placed. Isn't that enough for a new trial? Yes, and that was what I was getting to. That in the alternative, if you choose not to provide the first relief, we would ask that you would remand this for a new trial. Thank you for your time, Your Honors. Counselors, thank you both.